*1066 OPINION OF THE COURT
Ruben A. Martino, J.
In this breach of the lease holdover proceeding based on alleged fraud in reporting income, respondent moves to dismiss pursuant to CPLR 3211 and for other related relief. The court considered (1) the notice of motion, and (2) the affirmation in opposition. After considering the papers and reviewing the applicable law, the court grants the motion and dismisses the proceeding without prejudice for the reasons below.
The parties agree that the subject premises are subsidized by the Department of Housing and Urban Development (HUD) and are governed by the rules and regulations of HUD (see 42 USC § 1437; 24 CFR part 982). Petitioner claims that respondent knowingly supplied false information regarding income used to determine her rent and assistance payment for 1999 through and including 2003. Petitioner considered this a material noncompliance with the terms of the leasehold and terminated the tenancy by serving a “10 Day Notice to Terminate.” This proceeding was then commenced.
Respondent argues that the HUD Handbook, entitled “Occupancy Requirements of Subsidized Multifamily Housing Programs” (4350.3 Rev-1), sets forth the procedures to be used by owners when fraud is suspected. An owner must first investigate suspected fraud and may either confront the tenant with the information or obtain additional information from other persons or agencies for verification (HUD Handbook 4350.3 11 8-17 [C]). Once the investigation is completed, the owner must notify the tenant in writing of the error and identify what information is believed to be incorrect (HUD Handbook 4350.3 11 8-17 [D] [1]). The tenant must have an opportunity, within 10 days, to meet with the owner, discuss the allegations with a designated representative who has not been involved with the review and be provided with a written final decision. (HUD Handbook 4350.3 11 8-17 [D] [2].) Thereafter, if fraud is found, the owner is authorized to terminate the tenancy. (HUD Handbook 4350.3 11 8-17 [G].) Petitioner concedes, as alleged by respondent, that it never sent her the 10-day letter nor offered her a meeting to explain or discuss the charges prior to terminating the tenancy. Petitioner argues that the HUD Handbook is a policy, not a rule, because it was not published in the Federal Register and, therefore, should not be given the effect of law but only accorded considerable weight (see Allied Manor Rd. LLC v Grube, NYLJ, Apr. 20, 2005, at 21, col 1 [Civ *1067 Ct, Richmond County]). Petitioner also points out that it believes respondent would not have attended the meeting in any event and has no real defense to the charges. The issue is whether petitioner’s failure to follow the pretermination procedures in the HUD Handbook requires dismissal in this case.
The Secretary of HUD has been given broad rule-making power and “may make such rules and regulations as may be necessary to carry out his functions, powers, and duties” (42 USC § 3535 [d]). Courts have held that the HUD Handbook is binding and sets forth the procedures to be followed regarding the section 8 program (Matter of Nelson v Roberts, 304 AD2d 20 [1st Dept 2003] [HUD Handbook sets forth procedures for implementing the section 8 program]; Greenport Assoc. v Gallimore, 7 Misc 3d 133[A], 2005 NY Slip Op 50649[U] [App Term, 2d & 11th Jud Dists 2005] [using HUD Handbook definition of fraud to determine if tenancy was properly terminated]; Green Park Assoc. v Inman, 121 Misc 2d 204 [Civ Ct, NY County 1983] [Handbook termination procedures were intended to be mandatory, not advisory]).
The Allied Manor case cited by petitioner recognizes that, at the very least, the HUD Handbook must be accorded considerable weight. The purpose of the federal section 8 program is to assist low-income families in obtaining decent and safe housing (42 USC § 1437f). The procedures set forth in the HUD Handbook outlining the steps for investigating and resolving cases of suspected fraud before terminating a subsidized tenancy are in line with the purpose of providing and maintaining housing for low-income families. The court accords the Handbook considerable weight, even if not formally published, and holds that petitioner must follow the pretermination procedures before terminating this tenancy and commencing a proceeding.
Additionally, the court notes that petitioner, in its affirmation in opposition, relies on the same HUD Handbook it claims is not binding to support its ability to collect information and verify respondent’s income to recompute the rent (affirmation in opposition para 7). The lease agreement between the parties makes the HUD Handbook binding for purposes of recertification and interim changes (affirmation in opposition, exhibit 1, paras 15, 16). Paragraph 17 (b) of the lease requires 10 days’ written notice and an opportunity to meet prior to termination.
Accordingly, the motion is granted and the proceeding is dismissed without prejudice to petitioner’s commencement of a *1068 new proceeding, if appropriate, after it complies with procedures in the HUD Handbook. The court need not and does not consider any of the other issues raised in the motion.